**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MALIK SOLOMON,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **NO. 2:24-cv-05606-JLS** |
| | : | |
| **CITY OF PHILADELPHIA, *et al.*,** | : | |
| **Defendants.** | : | |

## MEMORANDUM

After suffering an attack while being incarcerated, Plaintiff Malik Solomon filed a pro se § 1983 lawsuit, claiming the City of Philadelphia and ten individuals violated his First and Eighth Amendment rights. *See* Am. Compl., Dkt. No. 6. Three individual defendants, Sergeant Black, Correction Officer T. Henry, and former Correction Officer Brooks, answered Solomon's complaint. Dkt. Nos. 26, 57. The City and six of the individual defendants moved to dismiss, Dkt. Nos. 25, 52, which Solomon opposed, Dkt. Nos. 33, 64. As explained in more detail below, the Court will dismiss the claims against the City because Solomon failed to plausibly allege a basis for municipal liability. It will dismiss the claims against the moving individual defendants because Solomon failed to plausibly allege deliberate indifference. The Court will also exercise its screening authority to dismiss any claim against the remaining unidentified defendant, Jane Doe #2, who is in an identical position as the moving individual defendants.

## I. FACTUAL BACKGROUND

This background focuses on the facts alleged against the City and the moving individual defendants, replacing the Doe placeholders in Solomon's amended complaint with the subsequent identifications. *See* Dkt. No. 39. The moving individual defendants—L. Nunes, M. Marlow, Ramel Young, Jason Kurth, Krystyna Hayles, and Holly Callahan—all served on the CERT Team. Am.

Compl. ¶¶ 9–14. The complaint describes the CERT Team as a trained emergency deployment team but does not explain the acronym. Am. Compl. p. 4.

In June 2023, the moving individual defendants entered Solomon's block to conduct cell searches. Am. Compl. ¶ 18. Nunes and Marlow entered a cell to search it, and a fight ensued with an aggressive inmate. Am. Compl. ¶ 19. Callahan, Young, Kurth, and Hayles ran down the steps in response to the officers' yelling. Am. Compl. ¶ 19. Hayles ordered all inmate block workers to stay back while Nunes and Marlow "took control of the situation." Am. Compl. ¶ 20. Nunes and Marlow explained to the rest of the CERT officers that they discovered a cell phone and instructed the other officers to contact Black. Am. Compl. ¶ 20. The CERT officers told Brooks that "they think there is a weapon hidden" in the cell because the inmate was hiding something. Am. Compl. ¶ 21. The CERT officers left the block without removing the aggressive inmate. Am. Compl. ¶ 22. Solomon later alleges that the CERT officers knew the aggressive inmates "were suspected of having a weapon on them," failed to transfer the inmates to a restrictive housing unit, and created an unsafe and dangerous condition. Am. Compl. ¶¶ 29, 31, 32.

The complaint contains no other factual allegations against the CERT officers. It details an incident earlier in June 2023 when Black refused to provide Solomon with a grievance form, which Solomon sought to complain about Henry. Am. Compl. ¶ 17. And it details an incident during and after lunch on the same day the CERT officers searched the cell. Am. Compl. ¶¶ 23–59. During lunch, Brooks unlocked the searched cell, and two inmates unsuccessfully attempted to push their way out, screaming that they would kill someone. Am. Compl. ¶ 26.

Approximately twenty minutes after lunch, Henry entered the block to speak with Brooks. Am. Compl. ¶ 34. Solomon overheard Brooks telling Henry about the lunch incident. Am. Compl. ¶ 34. Solomon alleges Brooks and Henry said, "how they don[']t get paid enough for this, shit I will let them f**k each other up." Am. Compl. ¶ 34. After the conversation with Brooks, Henry

walked to the searched cell and let the two inmates out. Am. Compl. ¶¶ 36–38. Henry stood by the cell's door and watched the inmates run towards Solomon, reach inside their waistbands, pull out "wacks" (presumably, inmate-fashioned weapons) and stab, punch, and kick Solomon. Am. Compl. ¶¶ 38–40. The attackers stabbed Solomon in his "face and neck, as blood poured down his face," and he "was in extreme pain." Am. Compl. ¶ 41. Henry did not call for backup or attempt to interfere. Am. Compl. ¶ 41. Brooks eventually appeared and pepper sprayed the attackers. Am. Compl. ¶ 46. Solomon was treated at an outside hospital, and upon his return to prison, prison officials transferred him to the Riverside Correctional Facility, where inmates in protective custody are housed. Am. Compl. ¶ 54. After officials, including Black and Henry, threatened to retaliate against Solomon if he complained about the incident, Solomon feared for his life and only pursued legal action when he was incarcerated elsewhere. Am. Compl. ¶¶ 55–59.

## II. STANDARD OF REVIEW

When deciding motions to dismiss, the Court determines whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Because Solomon is proceeding pro se, the Court construes his allegations liberally, "apply[ing] the relevant legal principle even when the complaint has failed to name it." *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239,

244 (3d Cir. 2013)). But pro se litigants still need to allege sufficient facts in their complaints. *Id.* (quoting *Mala*, 704 F.3d at 245).

This Court has the authority to screen Solomon's Amended Complaint pursuant to 28 U.S.C. § 1915A. *Webb v. Dep't of Just.*, 117 F.4th 560, 564 (3d Cir. 2024). Section 1915A(a) requires the Court to review "as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." In doing so, the Court must dismiss a complaint or any portion thereof that "is frivolous, malicious, or fails to state a claim upon which relief may be granted." *Id.* § 1915A(b)(1). Whether a complaint fails to state a claim under § 1915A(b)(1) is governed by the same standard applicable to motions to dismiss under Rule 12(b)(6). *See Harris v. Wetzel*, 822 F. App'x 128, 130 (3d Cir. 2020) (per curiam).

## III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Additionally, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

### A. Solomon failed to plausibly allege municipal liability against the City.

Solomon claims the City and its policymakers violated the Eighth Amendment when they were "aware of similar unlawful conduct in the past, but failed to train[] and take precautions against future violations," which resulted in Solomon's assault. Am. Compl. ¶ 61. He claims the City was also aware that PICC was grossly understaffed and that the lack of adequate personnel to man high risk/high security zones created the dangerous circumstances that allowed the violent assault by two inmates. Am. Compl. ¶ 62.

A plaintiff may plead a basis for municipal liability under § 1983 in two ways. First, a plaintiff can allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978). "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). For § 1983 purposes, policy occurs when a decisionmaker with final authority issues an official proclamation or edict. *See Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019). Custom occurs when a given course of conduct is so settled and permanent that it essentially constitutes law, even without legal endorsement or authorization. *See id.* For a custom to be the proximate cause of an injury, a plaintiff must establish that the Defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury." *Id.* (cleaned up).

Second, a plaintiff may state a basis for municipal liability is by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* In this context, the plaintiff must allege that the inadequacy in the training caused the constitutional violation at issue. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Usually, "a pattern of similar constitutional violations by untrained employees is necessary to demonstrate deliberate indifference for purposes of failure to train." *Thomas v. Cumberland County*, 749 F.3d 217, 223 (3d Cir. 2014) (cleaned up).

The City argues Solomon has not met the legal standards for pleading a *Monell* claim, and the Court agrees. Solomon's allegation that the City "and its policy makers were aware of similar unlawful conduct in the past, but failed to train and take precautions against future violations" only recites the *Monell* standard, which fails to state a plausible *Monell* claim. Am. Compl. ¶ 61; *see McTernan*, 564 F.3d at 659. That allegation is also vaguely phrased, leaving the Court guessing what Solomon is referring to by alleging "similar unlawful conduct" for which the City allegedly failed to train.[1] *See Groman v. Township of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) (concluding that a plaintiff must allege more than "vague assertions" of a policy or custom to plead a claim under *Monell*).

Solomon identifies an alleged policy or custom by asserting the City has been aware of "ghost staffing" or understaffing in the Philadelphia jails but has ignored the dangers posed by that practice. Am. Compl. ¶ 62. He relies on a newspaper article attached to his Amended Complaint to contend the City has known about but ignored the problem of understaffing in the jails. Am. Compl. p. 14 (attaching Samanth Melamed & Aubrey Whelan, *Locked & Loaded with Danger*, Phila. Daily News, Jul. 7, 2024, at 6). The article is factually unrelated to the allegations in Solomon's Amended Complaint but explores Philadelphia jails' efforts to provide medications for opiate use disorder. Am. Compl. p. 14. Yet Solomon uses it as the primary support for his contention that Philadelphia jails are plagued by severe short staffing. Am. Compl. ¶ 62.

Even if Solomon plausibly alleged that understaffing is a "custom," he failed to plausibly allege that understaffing proximately caused his injuries. *See Est. of Roman*, 914 F.3d at 798.

[1] To the extent that Solomon is alluding to a failure to train with respect to the CERT officials' alleged failure to follow proper procedures, *see* Am. Compl. ¶ 64, this fails to state a plausible *Monell* claim because the complaint lacks the necessary elements for a failure to train claim, *see Forrest*, 930 F.3d at 106, and Solomon has not alleged any facts showing a pattern of conduct outside of his own experience, *see Phillips v. Northampton Co.*, 687 F. App'x 129, 132 (3d Cir. 2017) (per curiam).

Solomon fails to allege that the block was experiencing understaffing when he was injured. He asserts that the unit was short staffed when Black removed the inmate from the searched cell without incident for pictures and when Brooks opened the door for lunch and the two inmates attempted to push out of the cell. Am. Compl. ¶¶ 23, 26. But Solomon failed to explain how understaffing then caused his injuries that occurred later, when Henry came into the unit. Am. Compl. ¶¶ 36-46. Solomon maintains Henry urged the two inmates to attack Solomon, that Henry permitted the attack to continue and did not intervene, and that he failed to call for backup to assist Solomon. Am. Compl. ¶¶ 36, 39-45. But Solomon failed to plausibly allege that understaffing caused his injuries when he has not alleged facts reflecting that the block was understaffed when he suffered those injuries, and he faults the actions or inactions of staff for his injuries. *See Parks v. City of Philadelphia*, No. 24-1299, 2024 WL 4530115, at *5 (E.D. Pa. Oct. 18, 2024) dismissing claim against Philadelphia when plaintiff failed to allege sufficient facts that understaffing was the moving force behind his alleged constitutional violation).

Solomon further claims Henry diverted from established policy when he failed to handcuff the inmates before they exited the cell and that Solomon heard him acknowledge as much to the inmates. Am. Compl. ¶¶ 36-38, 49, 66. Solomon also blames the CERT officers for violating policy by leaving the inmates in the searched cell uncuffed when those corrections officers suspected a hidden weapon. Am. Compl. ¶ 64. These purported facts do not allege liability for the City but allege misconduct by its employees. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) (holding that municipalities "are not vicariously liable under § 1983 for their employees' actions"); *Kranson v. Valley Crest Nursing Home*, 755 F.2d 46, 51 (3d Cir. 1985) ("Thus, the carelessness of an employee in failing to follow a policy or in misunderstanding its meaning may establish the negligence of the employee but does not fasten liability on the governmental agency."). Because

there is no respondeat superior for municipal liability under § 1983, his allegations based on the officials' individual actions are insufficient to state a *Monell* claim against the City.

In his response, Solomon doubles down on his allegations against Henry and the CERT officers, while focusing more on the general malaise caused by short-staffing policies or the execution of those policies. Dkt. No. 33 at 12, 15. He asserts the short staffing has "fueled a climate of disorder and violence in the jails." *Id*. at 12. Solomon contends the City officials knew about the dangerous conditions of the jails but have not acted. *Id*. at 15. The vague reference to the danger of jails is insufficient to state a custom or policy that caused his injury. *See Parks*, 2024 WL 4530115, at *5. Again, because Solomon has not identified a policy or custom related to his case, he has failed to plead a plausible claim for municipal liability. Accordingly, the Court will grant the City's Motion to Dismiss.

**B. Solomon failed to plausibly allege a claim against the CERT officers.**

Solomon alleges the CERT officers were deliberately indifferent to his safety, violating the Eighth Amendment "when they failed to protect him and caused these actions in part when they knowingly left both inmate aggressors unhand[-]cuffed with direct knowledge of a suspected weapon pos[session]." Am. Compl. ¶ 64. Solomon further claims that their failure to follow policy and procedure "created a substantial risk to his safety." Am. Compl. ¶ 64. The Eighth Amendment, which the Fourteenth Amendment made applicable to the states, prohibits states from inflicting "cruel and unusual punishments." *See Rhodes v. Chapman*, 452 U.S. 337, 344-46 (1981). Under the Eighth Amendment, prison officials have a duty to "provide humane conditions of confinement," including "adequate food, clothing, shelter, medical care, and must take reasonable measures to guarantee the safety of the inmates." *See Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (cleaned up). Courts have found that prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (cleaned up). "Being violently assaulted in

prison is simply 'not part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (quoting *Rhodes*, 452 U.S. at 347).

For a failure-to-protect claim, a plaintiff must allege that (1) the conditions in which he was incarcerated posed a substantial risk of serious harm; (2) the prison official acted with deliberate indifference to that substantial risk of serious harm; and (3) the official's deliberate indifference caused harm. *Kalu v. Spaulding*, 113 F.4th 311, 341–42 (3d Cir. 2024). A prison official demonstrates deliberate indifference to the risk of inmate-on-inmate violence if, before an attack, the official knows an inmate faces "an excessive risk of harm" but does nothing to prevent the assault. *Bistrian v. Levi*, 696 F.3d 352, 369 (3d Cir. 2012), *abrogated on other grounds as recognized by Fisher v. Hollingsworth*, 115 F.4th 197, 204 (3d Cir. 2024). Deliberate indifference may also exist if, when an attack occurs, an official has "a realistic and reasonable opportunity to intervene" but "simply refuse[s] to do so." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). Deliberate indifference in the context of a failure-to-protect claim is a subjective standard that requires the plaintiff allege that the prison official "must actually [have been] aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001); *see also Day v. Fed. Bureau of Prisons*, 233 F. App'x 132, 134 (3d Cir. 2007) ("Deliberate indifference is more than a mere lack of ordinary due care—it is a state of mind equivalent to a reckless disregard of a known risk of harm.").

The CERT officials assert that Solomon failed to state a claim against them under either a "failure to intervene" theory or under a "prior knowledge of excessive risk of assault" theory. Dkt. No. 52 at 7–9. Solomon responds that they failed to intervene because "they had full knowledge[] and opportunity," and Solomon was assaulted "only hours later." Dkt. No 63 at 10. As the CERT officials point out, however, none of them were present when the two inmates attacked Solomon; they locked the one inmate aggressor in his cell before they left the unit; and the attack did not

occur until hours later. *See* Dkt. No. 52 at 9; Dkt. No. 63 at 10; *Smith*, 293 F.3d at 650 (noting that an officer may be liable by refusing to intervene in an unprovoked beating taking place in his presence and citing cases). As the Third Circuit explained, liability under the Eighth Amendment for failing to intervene lies in "[t]he approving silence emanating from the officer who stands by and watches as others unleash an unjustified assault" because that inaction "contributes to the actual use of excessive force." *Smith*, 293 F.3d at 651. Solomon's claim under this theory against the officers who had not been present on the unit for hours is therefore implausible.

Solomon also asserts that the CERT officials ignored a risk to his safety by locking the inmate back in the cell even though they suspected the inmate had a weapon hidden. Am. Compl. ¶ 64. He states that Hayles "ordered all the block worker inmates to stay back from the cell while [Nunes and Marlow] took control of the situation inside cell 18." Am. Compl. ¶ 20. Then, ["[a]fter the [CERT officials] . . . ended the search[,] they locked the (inmate aggressor John Doe #1) in his cell and reported to the block officer Defendant[] C. Brooks 'do not open the door as they found a cell phone, and they think there is a weapon hidden, as he was hiding something on his body before they entered.'" Am. Compl. ¶ 21. The CERT officials left the block. Am. Compl. ¶ 22) Solomon states that he was attacked "hours after" that. Dkt. No. 63 at 8.

As the CERT officials point out, to be liable, they must have known that Solomon faced "a specific threat of harm" from the other inmate but did nothing to prevent injury. Dkt. No. 52 at 8; *see also Bistrian*, 696 F.3d at 369 (noting that an official must know an inmate faces "an excessive risk of harm" from another prisoner). As alleged by Solomon, CERT official Hayles appreciated the danger to block members during the search and ordered them to stay back. But there is nothing in the Amended Complaint suggesting that, after the inmate was locked back into the cell and the team left, CERT officials had an "actual, subjective appreciation of a substantial risk" that the inmate would, after hours and other alleged events transpired, injure Solomon. *Day*, 233 F. App'x

at 133 (citing *Farmer*, 511 U.S. at 837–38). Even crediting Solomon's allegation in one portion of the Amended Complaint that the inmates "vocally threatened" Solomon, he claims that threat occurred well after the CERT officials had left, while lunch was being served. Am. Compl. ¶ 29.

Solomon alleges that after the CERT officials locked the inmate back in his cell, they instructed Brooks to keep the cell door closed because they suspected the inmate might have a weapon. Am. Compl. ¶ 21. The allegation that a CERT official had a suspicion of a weapon fails to constitute actual knowledge of a substantial risk nor does it provide an inference of actual knowledge. Solomon argues that "the possibility that a weapon remained" "presented a foreseeable risk of harm," Dkt. No. 63 at 9, but negligence is insufficient to constitute deliberate indifference, *Lanko v. Wetzel*, No. 21-1075, 2023 WL 2307101, at *9 (W.D. Pa. Mar. 1, 2023) ("[E]ven gross errors of judgment are not constitutional violations; liability requires subjective, not objective, culpability."). In fact, the CERT officials did work to prevent injury and ensure the safety of others by locking the inmate back into the cell and instructing Brooks not to open the cell door.

Further, Solomon argues that the CERT officials diverged from "policy and procedure" by keeping the inmate in his cell without handcuffs when they suspected he had a weapon. Am. Compl. ¶ 64. But an official's failure to adhere to protocols does not equate to a deliberate indifference reflecting a subjective awareness to an excessive risk of harm. *See Beers-Capitol*, 256 F.3d at 141 (explaining that defendant's failure to follow procedures and law "is evidence of negligence in the performance of his job, but it does nothing to support the claim that he knew or must have known of the excessive risk"); *see also Curry v. McCann*, No. 18-5444, 2019 WL 77441, at *7 (E.D. Pa. Jan. 2, 2019) (noting that "a prison's departure from the policies and procedures outlined in the facility's handbook does not, in and of itself, amount to a constitutional violation actionable under § 1983." (quoting *Laufgas v. Speziale*, No. 04-1697, 2006 WL 2528009,

at *7 n.7 (D.N.J. Aug. 31, 2006))). Because Solomon has failed to state a plausible claim against the CERT official, their motion to dismiss will be granted.

**C. Solomon failed to plausibly allege a claim against Jane Doe #2.**

The Court retains the authority to screen Solomon's Amended Complaint pursuant to 28 U.S.C. § 1915A. Because the Court has concluded that Solomon has not alleged a plausible constitutional claim against any of the CERT officials, it will dismiss any claim against the unidentified Doe Defendant for failure to state a claim, for the same reasons articulated above. *See* 28 U.S.C. § 1915A(b)(1).

## IV. CONCLUSION

For the foregoing reasons, the City's moting will be granted, and the *Monell* claims alleged against the City will be dismissed. The CERT officials' motion will be granted, and the claims alleged against Nunes, Marlow, Young, Kurth, Hayles, and Callahan will be dismissed. The claims against the seventh, unnamed Doe will be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915A. All dismissals are with prejudice because amendment would be futile. The claims against Black, Brooks, and Henry will proceed.

**BY THE COURT:**

*/s/ Jeffrey L. Schmehl*
**JEFFREY L. SCHMEHL**
**United States District Court Judge**